Neptune Bagel Bakers, Inc. v. Commissioner.
Neptune Bagel Bakers, Inc. v. Commissioner
Docket No. 47063.
United States Tax Court
T.C. Memo 1955-101; 1955 Tax Ct. Memo LEXIS 239; 14 T.C.M. (CCH) 339; T.C.M. (RIA) 55101; April 22, 1955
*239 Deficiencies occur in each of two taxable years involved because unsubstantiated expenses are disallowed. Held: 1. Part of the deficiencies in each year is due to fraud with intent to evade taxes. 2. Delinquency penalty is approved for each year for failure to file timely returns. Vincent B. Lewin, Esq., for the petitioner. Maurice E. Stark, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax and penalties as follows: Year Ended
50%
25%
May 31st
Deficiency
Penalty
Penalty
1949
$5,327.91
$2,663.96
$1,331.98
1950
7,258.69
3,629.35
1,814.67
The deficiencies arise from the disallowance of deductions for wages and from some unreported income. Findings of Fact The petitioner, Neptune Bagel Bakers, Inc., is a corporation duly organized and existing under the laws of the State of New York with its principal office located in Brooklyn, New York. Petitioner's income tax returns for the fiscal years ended May 31, 1949, and May 31, 1950, were filed with the collector of internal revenue for the first district of New York. Both returns were filed *240 on April 24, 1952. The petitioner operated a bagel bakery. A bagel is a form of a hard roll or bun made principally from high gluten flour and water, with small amounts of salt and malt added. A bagel is shaped like a doughnut with a hole in the middle. Bagels are made traditionally in two sizes: bull, or large, bagels and small bagels. When distributed, there are 4 2/3 dozen (56) bagels to a box. The bagel baking industry is concentrated in the New York City metropolitan area and the principal retail sales are made during the weekends to Jewish patrons. About 35 bakeries bake and sell bagels in the metropolitan area in New York City and northern New Jersey. Internal revenue agents investigated the bagel industry commencing about April 1951 and continuing thereafter for several years. In the course of this investigation, revenue agents employed a formula, secured from General Mills, to test the accuracy of the returns of sales made by the various companies in the industry. The formula showed the number of small-sized bagels that could be produced from 100 pounds of flour, together with proportionate amounts of other ingredients. In applying the formula to the petitioner's production, *241 an adjustment was made to compensate for shrinkage from waste, personal consumption by employees, returns of stale merchandise and similar factors which reduced the net production from a specified quantity of flour available for retail sale. After adjustment for shrinkage as above, the formula yielded an average production of 20 boxes containing 56 bagels each from 100 pounds of flour. Petitioner consumed 2,945 and 3,450 100-pound bags of flour in its baking operations for the taxable years ended May 31, 1949 and 1950, respectively. On the basis of the foregoing formula, petitioner produced and sold 274,867 and 322,000 dozen bagels during its taxable years ended May 31, 1949 and 1950, respectively. During the years in issue, bagel bakeries received 35 to 55 cents per dozen for bull bagels and usually 31 to 33 cents per dozen for small bagels, but some prices for the latter ranged as low as 26 to 28 cents per dozen. An average price of 29 cents per dozen was used by respondent in converting petitioner's production into gross receipts. This price reflected adjustments for returns of stale bagels and returns for other reasons. Petitioner received $81,403.57 from the sale of bagels *242 in the fiscal year 1949, and $93,380 from the sale of bagels in the fiscal year 1950. In 1949, petitioner also received $441.75 from the sale of empty flour bags and $517.50 in 1950 from the same source. During the years involved, the petitioner systematically understated in its records the gross receipts it received from bakery operations. At the same time, petitioner's books showed the full amount of the wages paid by check to its employees periodically during the year. Following the close of each of the years involved, petitioner made adjustments on its books, increasing wages and gross receipts by equivalent amounts. The adjustment for the fiscal year 1949 was an addition of $20,913.97 to gross receipts and the same amount to wages. A similar adjustment in the amount of $17,930.48 was made at the close of the fiscal year 1950. There were no records to support these adjustments. After these adjustments, petitioner's books showed gross receipts of $81,403.57 and salaries and wages of $44,977.28 for the fiscal year 1949. After the adjustments at the close of the fiscal year 1950, petitioner's books showed gross receipts of $85,562.14 and salaries and wages of $46,936.48. The *243 petitioner's returns for these two years reported gross receipts and deducted salaries and wages in the amount of the foregoing adjusted totals. The respondent disallowed the year-end adjustments insofar as they increased salaries and wages because the increase in these expenses was not substantiated by petitioner's records. Petitioner also realized income of $686 from rents and $8.18 from a purchase discount in fiscal 1949 and income of $720 from rents in fiscal 1950. Petitioner had unreported net income of $23,311.65 for the fiscal year ended May 31, 1949, and unreported net income of $27,846.57 for the fiscal year ended May 31, 1950. Petitioner deducted as wages amounts alleged to have been paid in cash to its employees. The amount deducted in the fiscal year 1949 was $20,913.97 and the amount deducted in 1950 was $17,930.48. The deductions were false, were taken with intent to evade petitioner's income taxes, and were properly disallowed by the respondent. Part of the deficiencies in each year was due to fraud with intent to evade taxes. Petitioner's returns for both years were not timely filed. The failure to file on time was not due to reasonable cause but to wilful *244 neglect. Opinion ARUNDELL, Judge: The deficiencies claimed in this proceeding arise from the disallowance of deductions for wages and the inclusion of additional receipts in petitioner's gross income for each of the two fiscal years before us. Fraud and delinquency penalties are claimed for both years also. The respondent claims that the petitioner's books and records are inaccurate and do not properly reflect its gross receipts for the years in controversy and that petitioner made false entries in its books increasing the deductions for business expenses and thereby reducing its taxable net income for each of the two years before us. Consequently, the respondent reconstructed the petitioner's gross receipts for both years. He accomplished this by a formula which converted the raw materials used in each year into units available for sale and converted the result, by application of an average price per dozen, into total gross receipts. The formula yielded slightly less than the gross receipts actually reported by petitioner for the fiscal year 1949 after it had made an arbitrary year-end adjustment and slightly more than the gross receipts actually reported for the fiscal year *245 1950 after making a similar adjustment. In reconstructing net income, the respondent used the gross receipts as reported on petitioner's return for 1949 and gross receipts as reconstructed by his formula for 1950. In other words, the respondent used the maximum figure for gross receipts which was available to him for each year - the reported amount being greater in 1949, but the reconstructed amount being greater in 1950. For each year, the respondent used wages appearing on petitioner's books, before the year-end adjustment, that is to say, the portion of the wages paid by check. The petitioner's books were admittedly kept in an irregular manner. The petitioner's rationalization for this exists in the alleged payroll practices in petitioner's business. The petitioner claims that it was a traditional practice in its industry to pay employees a portion of their weekly wages in cash and the remainder by check. The petitioner claims that it obtained the money to pay the cash portion of the wages from its cash receipts. During the course of the year, according to petitioner's claim, it sequestered a sufficient amount of cash from gross receipts to pay the cash portion of the weekly *246 wages to its employees. The petitioner claims to have kept an accurate record of the amount allegedly paid in cash to its employees during the year. The petitioner finally claims that the adjusting entries merely added to gross receipts the amount of cash that had been withheld previously to pay the cash portion of its employees' wages and increased the amount already shown for wages to reflect the additional payments. Petitioner argues that it was required to follow the practice of paying a portion of the wages in cash at the insistence of its employees, and that no withholding was made in the cash wages and there was no report made to the revenue department that wages were paid in the amount of the cash. The respondent disallowed the entire amount of the increased deduction for additional wages allegedly paid by petitioner in cash. It is the respondent's position that the additional amount was falsely claimed as a deduction and that it was taken with intent to evade taxes. The only evidence in the record to support the petitioner's claim is the testimony of its president that it followed the practice of paying a portion of its employees' wages in cash and understating gross *247 receipts during the year by the amount so paid out. There is also the testimony of petitioner's accountant that he made the adjusting entries and that he derived the amount of the entries from a tally book allegedly showing the weekly production of the various employes and the respective amounts paid to them in cash and by check. This document consists of a series of pencilled columns of figures, without explanation, and covers really only part of one of the years before us. We do not think that we can attach sufficient reliability to this document to justify a conclusion that the petitioner's story is correct. It is an accepted principle that fraud is never presumed, and that it must be proved by the respondent by clear and convincing evidence. However, it is seldom that fraud can be proved directly because, absent an outright admission of fraud, even a small degree of ingenuity is sufficient to hide positive and direct proof of intentional evasion. Consequently, it is often necessary to rely on the natural inferences that follow from a taxpayer's irregular practices and conduct in business. We start in this case with an admission that the taxpayer's books were not kept according *248 to accepted practice during the years and that certain adjustments were made at the end of the year. The alleged justification for the irregular practice is that the petitioner was forced to accommodate its employees in their plan to avoid withholding on the full amount of their wages. As we understand petitioner's defense, it is that it was forced into what amounts to a conspiracy to defraud the United States out of taxes which should have been withheld from the wages of its employees. While admitting that fraud was being practiced on the revenue in this manner, petitioner contends that it was not attempting to defraud the United States by its present returns. Certainly in the circumstances there should be some corroborative evidence to support this story, but not a single wage earner was called to testify that some portion of his wages was received in cash. In this state of the record we cannot accept petitioner's explanation. It is our opinion that the returns were false and fraudulent, and we find for each of the taxable years some part of the deficiency was due to fraud with intent to evade the tax. In view of the admitted irregularity in petitioner's bookkeeping, and the absence *249 of records to substantiate its receipts, we think it was proper for the respondent to reconstruct the petitioner's gross receipts. Moreover, we think that the formula used to convert the raw materials into receipts was a reasonable method of determining petitioner's gross receipts. However, since petitioner reported gross receipts greater than produced by the application of the formula, respondent was warranted in using the receipts reported by the petitioner for 1949. The respondent also asks for the imposition of the penalty for failure to file a timely return for each of the two years before us. The petitioner claimed error in its petition but did not pursue the matter at the trial or on brief. Our findings show that both returns were filed in April 1952 - well beyond the time when they were due. Since no explanation for the delay in filing has been forthcoming, we will approve the respondent's determination that the delinquency penalty be imposed. Decision will be entered under Rule 50.